GOVIE O. MCKINNEY *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Suffolk.    February 21, 1973. — November 30, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Truth-in-Lending Act.  Debt.*

Where the plaintiff's declaration alleged that a sale to him by the defendant of a motor vehicle liability insurance policy under a prepayment plan with monthly premium bills and a finance charge on the outstanding balance was subject to the disclosure requirements of the Massachusetts Truth-in-Lending Act, G. L. c. 140C, but contained no allegation concerning the plaintiff's obligation to make remaining payments in the event he chose to cancel the policy, and thus set forth nothing to show that the transaction was a debt rather than a prepayment plan, the defendant's demurrer was properly sustained. [570-573]

---

CONTRACT. Writ in the Superior Court dated July 7, 1972.

The action was heard by *Kalus, J.*, on demurrer.

*Edward J. Dailey* for the plaintiff.

*Robert W. Macnamara* for the defendant.

KEVILLE, J. This action was brought to establish that the defendant, in selling a Massachusetts motor vehicle liability insurance policy to the plaintiff, is subject to disclosure requirements of the Truth-in-Lending Act, G. L. c. 140C[1] (the act), and that due to the defendant's failure to meet those requirements, it is subject to the penalty, costs and counsel fee imposed by § 10(b) of the act. The plaintiff has appealed from the order of the trial judge sustaining the defendant's demurrer without leave to amend. The sole ground for demurrer argued by the defendant is that the declaration fails to state concisely and with substantial certainty the substantive facts necessary to constitute a legal cause of action.

To the declaration are annexed the premium bill and the policy declaration sheet.[2] The plaintiff's relevant allegations are that the policy was sold to him on or about January 1, 1970. He was given a choice of two payment plans, full payment of the annual premium to "avoid incurring the extra cost of instalment service," or a monthly billing plan with a payment at the outset and future payments spread over as many as nine months. Under the monthly billing plan there was a finance charge of three quarters of one percent a month (annual percentage rate

---

[1] Inserted by St. 1969, c. 517, § 1. Under Regulation Z (12 C. F. R. §§ 226.1, et seq.) of the Federal Truth-in-Lending Act (15 U. S. C. §§ 1601, et seq. [1970]), the Federal Reserve Board has authority to grant exemptions from the Federal act for classes of transactions which, under the laws of a State, are subject to "requirements substantially similar" to those imposed under the Federal act, provided that there is adequate provision for enforcement. 12 C. F. R. § 226.12. Massachusetts was granted such an exemption effective July 1, 1970. 35 F. R. 10358, June 25, 1970. Thus, disclosure requirements of the Massachusetts act have supplanted those of the Federal act insofar as they are material to this litigation.

[2] The policy itself is not included in the declaration.

nine percent) applied to the outstanding balance.[3] The plaintiff chose the monthly billing plan and made payments to the defendant thereunder.

The plaintiff asserts that the sale to him of the monthly billing plan was a "Consumer credit" transaction as defined in § 1(j) of the act,[4] that the defendant failed to disclose details of the plan required by § 7 and that the defendant is therefore liable to the plaintiff for the penalties imposed by § 10(b).

Under the act a "creditor" is defined as "a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit" (§ 1[l]). "Credit" is "the right granted by a creditor to a customer to defer payment of debt, incur debt and defer its payment, or purchase property or services and defer payment therefor" (§ 1[k]). A "customer" is "a natural person to whom consumer credit is offered" (§ 1[n]). Assuming arguendo that a motor vehicle insurance policy is "property or service" under § 1(j) of the act (see Couch, Insurance [2d ed.] § 1.11), the questions are whether the facts alleged are sufficient to show that the payment plan is one in which payment is deferred, a debt created and a creditor-debtor relationship established between the defendant and the plaintiff so that the plan falls within the scope of the act. The act has thus far not been construed, nor are we advised whether rules or regulations under § 11 have been promulgated by the Commissioner of Banks.[5]

---

[3] The premium bill requires a deposit of twenty-five percent of the premium with the application or a first monthly payment in an amount sufficient to bring the initial deposit up to twenty-five percent.

[4] "Credit offered or extended to a natural person, in which the money, property or service which is the subject of the transaction is primarily for personal, family, household or agricultural purposes . . . ."

[5] We do not take into consideration the letter from the Commissioner of Banks appended to the briefs dealing with the applicability of the act to instalment purchase of motor vehicle insurance since it does not have the force of a rule or regulation. Furthermore, reliance in the briefs upon previous litigation between the parties with respect to this transaction is also misplaced. Nothing in reference

There appears to be but one pertinent decision under the Federal act, *Gerlach* v. *Allstate Ins. Co.* 338 F. Supp. 642 (S.D. Fla. 1972), (cf. *Stefanski* v. *Mainway Budget Plan Inc.* 326 F. Supp. 138 [S.D. Fla. 1971]) in addition to correspondence releases of the Federal Reserve Board issued pursuant to its responsibility for implementing that act. 15 U. S. C. §§ 1604, 1607 (1970).[6] To the limited extent to which it is set forth in the declaration the transaction before us is similar to that in the *Gerlach* case. There the insured was offered a plan under which the annual premium could be paid in ten instalments with a down payment of ten percent plus a flat monthly service charge. If an instalment were not paid when due, the sole remedy available to the insurer was cancellation of the policy. Indeed, in the event of cancellation for any reason, the insurer could make no claim for any premium earned for coverage already provided but not paid for by the insured. The court concluded that the insurer was not a creditor of the insured, that the transaction was not a consumer credit transaction and was not subject to the Truth-in-Lending Act. *Gerlach* v. *Allstate Ins. Co., supra,* at 647, 648, 649.

Correspondence releases of the Federal Reserve Board have consistently taken the position that insurance premium financing plans "in which the customer is not obligated to make remaining payments but may elect to cancel at any time by simply not paying an instalment when due, would not create the creditor-debtor relationship required before a transaction becomes subject to [the disclosure requirements of] Regulation Z." FRB Letter of March 18, 1970, 4 C. C. H. Consumer Credit Guide, par. 30,406. See releases published in 4 C. C. H. Consumer Credit Guide, pars. 30,041, 30,051, 30,176 and 30,339. In

thereto appears upon the face of the declaration and it is not open upon demurrer. *Siegel* v. *Knott,* 316 Mass. 526, 528 (1944). *Fabrizio* v. *U.S. Suzuki Motor Corp.* 362 Mass. 873 (1972).

[6] These releases, though not legally binding, have been treated as persuasive. *Stefanski* v. *Mainway Budget Plan Inc.* 326 F. Supp. 138, 142 (S.D. Fla. 1971). *Gerlach* v. *Allstate Ins. Co.* 338 F. Supp. 642, 648-649 (S.D. Fla. 1972). *Bissette* v. *Colonial Mortgage Corp. of D. C.* 477 F. 2d 1245, 1246 (D.C. Cir. 1973).

these releases, the Board has made a clear distinction between the situation in which the insured is not obligated to make remaining payments and the transaction in which he becomes contractually obligated to pay the premium or to pay an indebtedness for premium. *Gerlach* v. *Allstate Ins. Co., supra,* at 648. There is nothing set forth in the declaration before us to show that the financing arrangement in question differed from that described in the *Gerlach* case. The declaration makes no reference to policy cancellation provisions or to what, if any, obligation rested on the insured to pay for premiums earned but remaining unpaid upon cancellation. Its limited averments indicate that the transaction was a prepayment plan rather than one in which payment of the premium was deferred. There is an insufficient showing that a debt was created and the requisite creditor-debtor relationship established so as to bring the transaction within the disclosure requirements of the act.

*Order sustaining demurrer affirmed.*