**Kathy D. MADEWELL and Charles M. Grove, II, Plaintiffs,**

v.

**MARIETTA DODGE, INC., Defendant.**

**Civ. A. No. C79–2081A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 18, 1980.

---

Frank L. Derrickson, Bowen, Derrickson, Goldberg & West, Atlanta, Ga., for plaintiffs.

Gregory J. Digel, Daniel A. Angelo, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

Presently before the Court in this truth-in-lending action is the recommendation of the United States Magistrate that defendant's motion for summary judgment be denied. Defendant has objected to that recommendation and asks the Court to find that there was no consumer credit sale between the parties to this action and that the transaction between the parties was accordingly not subject to the disclosure requirements of truth-in-lending law. The Magistrate found that a question of fact as to the intent of the parties precluded a ruling on that issue as a matter of law.

There is no objection to the Magistrate's statement of the facts from which this action arose or of the contentions of the parties with regard to defendant's motion for summary judgment. On October 8, 1979 plaintiffs signed a retail installment contract for the purchase from defendant of a used 1978 Dodge Omni. Plaintiffs additionally made a down payment of $100.00 by check and gave defendant possession of a 1969 Opel GT. Defendant gave plaintiffs possession of the Omni but did not sign the retail installment contract. Defendant contends that the understanding of the parties was that all dealings between them were contingent upon defendant's ability to sell the retail installment contract to a financial institution; plaintiffs contend that their understanding was that they had purchased a car. Approximately one week after the October 8, 1979 transaction, defendant returned the Opel and the $100.00 check to plaintiffs and plaintiffs returned the Omni to defendant. Plaintiffs allege that the retail installment contract which they signed violated truth-in-lending law in certain respects and defendant contends that truth-in-lending law is inapplicable to the transaction because there was no consumer credit sale nor any extension of credit.

Defendant asks this Court to rule that there was no consumer credit sale between the parties to this action because there was no written, signed agreement between them setting forth the details of the transaction as required by Ga.Code Ann. § 109A–2–201.[1] There is, however, a written agreement which sets forth the details of the transaction between the parties and which

---

1. Defendant's position in this action is that there was never an enforceable contract between the parties because of failure to comply with Ga.Code Ann. § 109A–2–201. Defendant does not contend that the contract, if any, was invalid for other reasons. Even if defendant had taken that position, the fact that a contract may not be valid under state law does not affect the application of truth-in-lending law. *Williams v. Public Finance Corp.*, 598 F.2d 349 (5th Cir. 1979).

is signed by plaintiffs. The document does not recite that it is an offer which becomes a contract only upon acceptance by defendant. There is no reference in the document to a condition that defendant sell it to a financial institution. The retail installment contract signed by plaintiffs is in fact a writing enforceable against them under Ga. Code Ann. § 109A–2–201(1), and plaintiffs can be considered to have obligated themselves to accept specified credit terms upon signing the contract. Such an obligation has been found sufficient to necessitate the disclosures required by truth-in-lending law. *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. 979 (S.D.Ohio 1976). This Court finds that the transaction before it was likewise subject to the disclosure requirements of truth-in-lending law.[2]

In *Copley v. Rona Enterprises, Inc.*, the parties signed a purchase agreement pursuant to which defendant was to sell and did sell a mobile home to plaintiffs. The agreement provided that it was subject to acceptance of financing by a bank or finance company, and it was signed by plaintiffs and defendant. Although a separate retail installment contract and security agreement were contemplated, the purchase agreement set forth a trade-in allowance, a cash downpayment, an unpaid balance, a finance charge, a charge for credit life insurance, a total deferred payment price and an annual percentage rate. The retail installment contract was never executed and defendant contended that there was accordingly no evidence of indebtedness and that the transaction was therefore outside the application of the disclosure requirements of truth-in-lending law.

The court in the *Copley* case found that although the defendant's approval of the purchase agreement was contingent upon acceptance of financing, plaintiffs had no corresponding way to escape their agreement to purchase the mobile home. The court accordingly considered the plaintiffs contractually bound to purchase a mobile home. Furthermore, because the purchase agreement set forth credit terms, the court found that it was a contract for the extension of credit and that plaintiffs had contractually bound themselves to accept particular credit terms. The court concluded that truth-in-lending disclosure requirements were therefore applicable, relying on the following language from *Wachtel v. West*, 476 F.2d 1062, (6th Cir.), *cert. denied* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973):

> It thus appears that a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs.

476 F.2d at 1065.

The retail installment contract in the present action sets forth the credit terms for the transaction contemplated and is therefore found to be a contract for the extension of credit for purposes of the disclosure requirements of truth-in-lending law. Accordingly, before plaintiffs signed the contract and obligated themselves to the credit terms set forth in it, they were entitled to the disclosures required by truth-in-lending law. 15 U.S.C. § 1638.[3] The Court finds this to be true even though the transaction contemplated when plaintiffs signed the contract was not consummated. The parties took action that would have been subject to truth-in-lending law had the transaction continued as contemplated, and defendant should have made the disclosures required by truth-in-lending law. Defendant was not entitled to rely on the possibility of an after-the-fact determination that the transaction would not go

---

2. In light of this conclusion it is unnecessary to consider plaintiffs' additional contentions that the transaction between the parties was a sale under Ga.Code Ann. § 109A–2–106(1) and § 109A–2–401 and that the contract signed by plaintiffs was enforceable under Ga.Code Ann. § 109A–2–201(3)(c).

3. . . . the disclosures . . . shall be made *before the credit is extended,* and may be made by disclosing the information in the contract or *other evidence of indebtedness to be signed* by the purchaser. 15 U.S.C. § 1638(b) (emphasis added).

forward, and this Court will not allow defendant to escape its responsibilities under truth-in-lending law on the basis of developments after the time at which disclosures, if required at all, were to be made. This is especially true since defendant had the right to call the transaction off and plaintiffs did not. The fact that a credit transaction is subsequently rescinded does not preclude recovery under truth-in-lending law. *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975).[4] To find that defendant was not required to make disclosures required by truth-in-lending law unless and until it signed the contract would violate not only the requirement that disclosures be made before the extension of credit, 15 U.S.C. § 1638(b), but also the very purpose of truth-in-lending law.[5]

Agreements which are contingent upon a seller's ability to arrange financing have been found not to be contracts for the extension of credit in a number of cases, but those cases are not inconsistent with this Court's holding. In *Baxter v. Sparks Oldsmobile, Inc.*, 579 F.2d 863 (4th Cir. 1978), for example, an order for the purchase of a car, signed by plaintiff, provided that the car dealer's obligation to sell was dependent on purchase by a bank or finance company of a retail installment contract between the parties. The retail installment contract was never executed, however, and the Court of Appeals for the Fourth Circuit found that the transaction was not within the requirements of truth-in-lending law. The Fourth Circuit's conclusion was based in part on the existence of the condition precedent in the order, but only because it was clear that no contract for the extension of credit had been consummated. No credit terms were set forth in the order. The Court of Appeals stated that "[i]f the arrangements for the extension of credit had been completed there could be little question relating to the applicability of the Act." 579 F.2d at 864.

In the present action the credit terms did not remain to be worked out after plaintiffs signed the retail installment contract. Instead, the credit arrangements were completed and spelled out in that document and no separate, more complete contract was contemplated.

### CONCLUSION

This Court ADOPTS the Magistrate's recommendation that defendant's motion for summary judgment be DENIED. This Court does not consider trial on the issue of the intent of the parties to be necessary, however. Instead, it finds that the transaction which gave rise to this action is subject to the disclosure requirements of truth-in-lending law, and it REMANDS this matter to the Magistrate for consideration of plaintiffs' allegations that defendant violated truth-in-lending law.

---

4. Although the recission in the *Sellers* case was at the option of the consumer under a separate provision of truth-in-lending law, the case is authority for permitting recovery by the consumers in this case after the lender rescinded the sale.

5. . . . It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . 15 U.S.C. § 1601.